IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GLORIA ABRAHAMSON,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

OPINION AND ORDER

16-cv-699-wmc

    Claimant Gloria Abrahamson seeks judicial review of a final decision of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, under 42 U.S.C. § 405(g), which denied her application for disability and disability insurance benefits. On January 17, 2018, the court held oral argument regarding claimant's contention that Administrative Law Judge Arthur J. Schneider (the "ALJ") failed to assess claimant's fibromyalgia under Social Security Rule 12-2p and thereby failed to incorporate appropriate limitations in the RFC to accommodate her subjective reports of pain. The parties agree that claimant's fibromyalgia constitutes a severe impairment, however the question is whether it sufficiently limited the claimant so as to preclude full-time work. The limited analysis performed by the ALJ turned on credibility. Because this determination is patently wrong, the Commissioner's decision will be reversed and remanded.

BACKGROUND

    Abrahamson filed a Title II application for disability and disability insurance benefits on March 19, 2013, with an alleged onset date of July 1, 2012, alleging disability caused by fibromyalgia, osteoporosis, fatigue, asthma and depression. (AR 29, 75, 86.)

She was 48 years old when she applied for benefits.

Claimant's education ended in the eighth grade. (AR 47.) At the time of the hearing, she was employed by Perry's Janitorial for 21 hours and fifteen minutes each week. (AR 47-48.) She had worked for Perry's Janitorial for the past twelve or thirteen years. (AR 48.) She explained that she worked with her fiancé, Randy Gardner, who she said helped her for "[o]ver half of the time" during the afternoon three hour and fifteen minute shift. (AR 49-50.) Before working as a janitor, she assisted in the delivery of newspapers. (AR 50.)

I. **Medical Record and Reports**

The administrative record contains medical records spanning December 2012 through July 2014, however no treating physician submitted an opinion endorsing disability or otherwise specifying that she could not work. In December 2010, Dr. Whitaker noted that Abrahamson was fatigued and "complain[ed] of back and joint pain, joint stiffness and swelling, muscle cramps and muscle weakness as well as headaches." (AR 338, 341.) In early January 2013, Dr. Bocoun documented that Abrahamson complained about "'aching 24 hours a day'" and "extreme fatigue," reporting that "[s]he noticed profound discomfort and fatigue approximately five months ago." (AR 318.) She explained that she had had intermittent pains, mostly in her lower extremities, for years, but the current pain was in her arms, shoulders and fingers. (*Id.*) She reported being so fatigued that she had trouble working and doing household chores, as well as suffering from "nonrestorative sleep." (*Id.*) At the end of January, Dr. Bocoun noted Abrahamson's "history of widespread chronic pain," with her current pain being rated "at 10 out of 10 in

2

severity." (AR 310.) Abrahamson reported trouble "perform[ing] everyday activities," including "her work duties as well as housework." (*Id.*)

In early February 2013, Abrahamson "[e]xpressed how difficult it has been to manage her symptoms, even on a day to day basis. The fatigue and pain is such that it is very difficult to function some times, but she pushes through the pain to get her work and house hold chores completed." (AR 306.) Dr. Whitaker's notes described Abrahamson's symptoms as

> Includ[ing] diffuse whole body pain, primarily in her limbs. The pain started about a month before she saw me initially, so perhaps early November or late October and prior to that she had begun having problems with fatigue. She notes that more recently the pain has been more so in her hands, arms and shoulder joints more so than her legs, but when [she] does get pain in her legs, it will be primarily in her calf, the knee and the thigh. Sometimes she has aching pain in her groin. She can get sharp shooting pain just about anywhere in her body and she often has numbness in her fingers and toes. . . . We talked today about possible **diagnoses** that may be contributing like fibromyalgia.

(AR 308.) Later in the month, she reported "constant and daily" pain which was "getting increasingly difficult to manage and do any type of work or day to day activities." (AR 304.) At the end of the month, Dr. Whitaker reported on Abrahamson's appointment in rheumatology with Dr. Bocoun, who thought that fibromyalgia was a "possible, if not probable, diagnosis." (AR 300.) At that point, Abrahamson reported difficulty cleaning for six hours at a time, headaches and dizziness in the evenings, and problems over the past month "with abdominal bloating, gas and discomfort." (*Id.*)

At the beginning of March 2013, Dr. Whitaker discussed irritable bowel syndrome with Abrahamson because of the "frequent mucus in her stools, intermittent abdominal

3

pain and bloating and sometimes some epigastric pain." (AR 299.) At the end of the month, Dr. Whitaker noted that "[Abrahamson] does have fibromyalgia" and addressed her use of Cymbalta. (AR 297.) In April, Abrahamson stated that "'[t]hings are agonizing'" and reported "every day intense pain" that was not helped by Cymbalta. (AR 403.)

Skipping ahead, she was diagnosed with mononucleosis on July 25, 2013. (AR 374.) Later medical records detail other fibromyalgia symptoms. In November 2013, she reported "more frequent headaches" that her doctor thought were "probably related to her fibromyalgia." (AR 499.) In February 2014, Abrahamson reported that her mouth and throat were "always dry," "pain, numbness and tingling in both hands that ha[d] been going on for several years," "numbness and tingling in both feet," and a "burn[ing]" tongue "that makes it hard to eat or taste food," as well as further complaints of "generalized aches and pains and overwhelming fatigue." (AR 545.) Later that month, she reported waking up with "severe pain in the center of her chest just below the breast bone," which "double[d] her over." (AR 552.) She said she had had similar pain for 15-20 years, but that it had become more frequent and intense in the past 6-12 months. (*Id.*) She also reported having nausea. (*Id.*)

## II. ALJ's Decision

On July 22, 2014, the ALJ conducted a video hearing, which was followed by a written decision on October 17, 2014, which concluded that Abrahamson "has not been under a disability within the meaning of the Social Security Act from July 1, 2012, through [October 17, 2014]." (AR 29.)

4

The decision noted that Abrahamson had worked after her alleged onset date, but that her employment did not rise to the level of substantial gainful activity. (AR 31.) She had received unemployment compensation, which required her to avow a readiness, willingness, and ability to work, which the ALJ noted was "not entirely consistent with allegations of total disability." (AR 31-32.)

Agreeing with state agency doctors Chan and Shaw, the ALJ concluded that claimant's asthma and fibromyalgia "represent severe impairments." (AR 32.) However, the ALJ determined she lacked "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments," noting that "there is insufficient documentation of any specific tender points to verify [her] diagnosis [of fibromyalgia]" and that "it appears probable that her recent bodily aches and fatigue complaints may be attributable to mononucleosis rather than fibromyalgia." (AR 34; *see also* AR 89 ("Most recent Labs were positive for mono and also La Crosse virus, which may explain most of her [symptoms].").) The ALJ added that mononucleosis would not normally be deemed disabling or be expected to last over 12 months. (AR. 33.)

After considering her symptoms "and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," the ALJ determined that Abrahamson "has the residual functional capacity to perform the full range of sedentary work" and that she was "capable of lifting weights of up to ten pounds and standing and walking for two hours during an eight hour day." (AR 34.) Recognizing that he needed to make a credibility determination where symptoms were not corroborated by objective medical evidence, he explained that "[a]lthough the

claimant's allegations may be credible to some extent in view of the mononucleosis diagnosis, this would not be a diagnosis which would be expected to impose long term or permanently disabling limitations." (AR 35.) The ALJ found that Abrahamson's mononucleosis could have caused some of her symptoms and that her statements about the symptoms were "not entirely credible" because of her "ongoing work activity, the paucity of the clinical evidence of musculoskeletal impairment, and the likely insufficient duration of the primary condition which the State agency physicians considered to represent the cause of her complaints." (*Id.*)

The ALJ concluded that she was not disabled. (AR 36.)

OPINION

There is no dispute that claimant has fibromyalgia and that it constitutes a severe impairment. (*See* AR 32.) Claimant contends that the ALJ improperly assessed her fibromyalgia under Social Security Rule 12-2p ("SSR 12-2p") and failed to include RFC limitations to accommodate her subjective reports of pain. (Pl.'s Br. (dkt. #11) 1, 6.) Claimant is correct that she was entitled to an analysis under SSR 12-2p. However, at the hearing the government argued that if remanded, the result of the ALJ's decision would be no different because the ALJ implicitly made credibility findings. Thus, the question becomes whether the ALJ's credibility findings were "patently wrong."

I. Social Security Rule 12-2p

The rule at issue permits a claimant to establish fibromyalgia under two different standards: either the 1990 ACR Criteria for the Classification of Fibromyalgia or the 2010

6

ACR Preliminary Diagnostic Criteria. The major difference is that the former requires positive tender points, while the latter instead relies on "manifestations of six or more [fibromyalgia] symptoms." *See* Social Security Ruling, SSR 12-2p, Titles II and XVI: Evaluation of Fibromyalgia, 77 Fed. Reg. 43,640, 43641-42 (July 25, 2012) (hereinafter "SSR 12-2p"). While the ALJ concluded that "there is insufficient documentation of any specific tender points to verify [her fibromyalgia] diagnosis," he failed to consider whether her diagnosis could be verified under the 2010 criteria, choosing instead to attribute her fatigue and aches to her summer 2013 diagnosis of mononucleosis.[1] (AR 34; *see also* AR 35 ("Although the claimant is diagnosed with moderate asthma and fibromyalgia in view of her complaints, she has largely failed to establish the first step in the two-step process cited above as, aside from mononucleosis[,] there is not really any diagnosis of an underlying medically determinable impairment which would reasonably be expected to produce severe underlying body aches of fatigue.").) By failing to consider the 2010 ACR diagnostic criteria, the ALJ misapplied the law. *See Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016) (explaining that the ACR's 1990 or 2010 diagnostic criteria can be used to establish fibromyalgia as an impairment and that it was not harmless error to only consider one). Abrahamson's medical records reveal symptoms such as headaches,

---

[1] To be fair, however, Abrahamson's medical records appear to refer to some, albeit not all of the required eleven, tender points. (*Compare* AR 525 ("[Abrahamson] is tender no matter where I palpate and no matter how deeply I palpate. This is probably most consistent with her fibromyalgia, however, she did seem to have more tenderness over the right biceps tendon and over some of the bony prominences over the right shoulder.") and AR 607 ("[Abrahamson] is extremely sensitive even to touching the skin the shoulders and the knees.") *with* SSR 12-2p at 43642 (tender points sites visual).)

7

numbness or tingling, chest pain, irritable bowel syndrome,[2] dry mouth, rash, fatigue, muscle pain, depression, and change in taste, all of which are "[fibromyalgia] symptoms[ or] signs." *See* SSR 12-2p at 43642 n.9. These symptoms should be sufficient to establish fibromyalgia.

Under SSR 12-2p, once fibromyalgia is established, the claimant is entitled to an "evaluat[ion of] the intensity and persistence of the person's pain or any other symptoms and determin[ation of] the extent to which the symptoms limit the person's capacity for work." SSR 12-2p at 43643. The only evaluation the ALJ performed stated that

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments (specifically the mononucleosis) could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons previously explained in this decision.

(AR 35.) The question then becomes whether the ALJ's credibility determination was "patently wrong."

## II. Credibility Determination

The ALJ found that Abrahamson's *mononucleosis* could have caused some of her symptoms and that her statements about the symptoms were "not entirely credible" because of her "ongoing work activity, the paucity of the clinical evidence of musculoskeletal impairment, and the likely insufficient duration of the primary condition

---

[2] While the court did not pinpoint a definitive diagnosis of irritable bowel syndrome, it was considered and Abrahamson appears to have the symptoms. *See* Irritable Bowel Syndrome, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/irritable-bowel-syndrome/symptoms-causes/syc-20360016.

8

which the State agency physicians considered to represent the cause of her complaints." (AR 35.) The Seventh Circuit instructs that an "ALJ's credibility determinations are entitled to special deference because the ALJ has the opportunity to observe the claimant testifying," while a reviewing court does not. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).[3] Therefore, reviewing courts give an ALJ's credibility determinations a "commonsensical reading," rather than "nitpick the ALJ's opinion for inconsistencies and contradictions," and will overturn an ALJ's credibility finding only if "patently wrong." *Id.* However, where an ALJ's credibility determination is based on "serious errors in reasoning rather than merely the demeanor of the witness," remand is necessary. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). As explained below, this is one of those cases.

First, claimant's ability to work part time -- aided in no small part by her fiancé -- is not good evidence of an ability to work full-time. *Vanprooyen v. Berryhill*, 864 F.3d 567, 571 (7th Cir. 2017) ("Part-time work is not good evidence of ability to engage in full-time employment, especially as [claimant] was able to continue working part-time only because some managers gave her easier shifts and other preferential treatment [including] . . . help from coworkers, . . . unscheduled breaks, and [the ability to] wr[i]te everything down without abbreviation[.]"). Claimant testified that her fiancé helped her significantly with her work, even though she only worked 21 hours and fifteen minutes each week. (AR 47-

---

[3] The Social Security Administration has eliminated the term "credibility" from symptom evaluation to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* Social Security Ruling SSR 16-3, Titles II and XCI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14,166, 14,167 (Mar. 16, 2016). The court need not determine if SSR 16-3 applies retroactively here.

9

50.) Her testimony is corroborated by her statements to her medical providers. In January 2013, she explained that her fatigue was "extreme to the point [where] she [was] ha[ving] difficulty performing housework and performing at work" and that it was "very difficult for her to perform her work duties as well as housework." (AR 318, 310.) In February, she stated that "[t]he fatigue and pain [are] such that it is very difficult to function some times, but she pushes through the pain to get her work and house hold chores completed" (AR 306), before reporting that "[i]t is getting increasingly difficult to manage and do any type of work or day to day activities" (AR 304). At that point, Abrahamson reported to her doctor that she worked for six hours at a time cleaning, but found "it very difficult." (AR 300.) As late as March 2014, Abrahamson informed a hospital social worker that she and her fiancé "jointly work 2 part time cleaning jobs" and that "[t]hey jointly manage household responsibilities without any additional support resources." (AR 426.) But this also does not provide evidence that she would be able to sustain fulltime employment. *See Thomas*, 826 F.3d at 961 (claimant's "ability to do limited chores, cooking, and self-care says little about her ability to perform the tasks of a full-time job"). Interestingly, Abrahamson's statements to her medical providers were largely ignored by state agency physician Dr. Chan, leading to a "partially credible" credibility assessment. (*See* AR 80 ("[Claimant] is able to work by herself 26 h[ou]rs a week w/o reported difficulty.").) Likewise, state agency physician Dr. Shaw ranked her credibility as "other" after finding she was "limited to a sedentary RFC" in part because she "makes meals, does dishes, light cleaning, shops in stores, and continues to work on a part-time bas[i]s as a janitor." (*See* AR 90-91.) The ALJ's reliance on Abrahamson's part-time work as a part of her credibility

10

determination was improper.

Second, "the paucity of the clinical evidence of musculoskeletal impairment" is an improper basis on which to discount the claimant's credibility because fibromyalgia is known for the lack of "laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *id.* (fibromyalgia's "cause or causes are unknown, there is no cure, and . . . its symptoms are entirely subjective"). Therefore, the lack of "clinical evidence of musculoskeletal impairment" is not a reason to discount Abrahamson's testimony, especially in light of SSR 12-2p's reliance on the 2010 ACR Preliminary Diagnostic Criteria.[4] *See Thomas v. Colvin*, 745 F.3d 802, 806-07 (7th Cir. 2014) ("[A] lack of medical evidence supporting the severity of a claimant's symptoms is insufficient, standing alone, to discredit her testimony. Because all of the other reasons given by the ALJ were illogical or otherwise flawed, this reason cannot alone support the finding that [claimant] was incredible.").

Third, and most dubious was the ALJ's decision to attribute Abrahamson's fibromyalgia symptoms to mononucleosis. The ALJ relied on the opinion of state-agency physician Dr. Shaw. (*See* AR 89 (noting that Abrahamson's "[m]ost recent Labs were positive for mono and also La Crosse virus, which may explain most of her [symptoms]").) However, this was improper. First, Dr. Shaw's opinion is not internally consistent: while

---

[4] Specifically, Abrahamson testified that "the fibromyalgia is definitely the one that gave me the unsurmountable amount of pain and exhaustion" (AR 59); that "[t]he physical problems [she is] having, the fibromyalgia, which gives [her] incredible pain" prevents her from working full-time (AR 50-51); that her fiancé, with whom she works, helps her for "[o]ver half" of their shift and "cover[s]" for her "because [she] cannot handle [her work]" (AR 49-50); and that when she is at home alone with him she is "pretty much in tears the majority of the time from depression and also the fact that the pain is so bad, and the exhaustion so bad" (AR 51).

11

he initially attributed Abrahamson's symptoms to mononucleosis and the La Crosse virus, he justified his proposed exertional limitations on "[s]evere fatigue and intermittent body pains due to FM [fibromyalgia] and La Crosse virus." (*Compare* AR 89 *with* AR 92.) Second, Dr. Shaw's focuses on Abrahamson's "[m]ost recent [l]abs" and ignores the months of medical records predating the positive mono and La Crosse tests which document the symptoms he (and later the ALJ) attributed to mononucleosis -- likely the claimant's fatigue and pain. To be clear, claimant's medical records show that she reported her pain began in late October or early November 2012 (AR 308) and a number of the other fibromyalgia symptoms pepper her medical records throughout (*see e.g.*, AR 306 (fatigue, which predated the pain); AR 318 (nonrestorative sleep); AR 338 (headache); AR 447 (depression); AR 545 (tingling, dry mouth and difficulty tasting food); AR 552 (nausea)), however she was only diagnosed with mononucleosis in July 2013 (AR 374). While an ALJ does not need to address "every piece of medical evidence in [his] opinion," he "cannot ignore a line of evidence contrary to [his] conclusion." *Thomas*, 745 F.3d at 806; *see also Mulligan v. Astrue*, 336 Fed. App'x 571, 576-77 (7th Cir. 2009) (remanding on the basis that ALJ provided a "faulty explanation for discounting a portion of [the treating physician's] opinion" in favor of the state agency physician's contrary opinion); *Guest v. Colvin*, No. 15 C 2843, 2016 U.S. Dist. LEXIS 67662, at *10-*13 (N.D. Ill. May 24, 2016) (remanding where ALJ's reliance on state agency physician's opinion, which did not consider all the medical records, was improper because it "was not based on a complete review of all the relevant medical evidence"). Additionally, this analysis improperly guts the fibromyalgia diagnosis -- which the state agency physicians and the ALJ agree upon --

by attributing its symptoms to a diagnosis of "insufficient duration." (AR 35.) By doing so, the ALJ (and by extension the state agency physicians) failed to provide "an accurate and logical bridge." *Thomas*, 754 F.3d at 806.

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying claimant Gloria Abrahamson's application for disability and disability insurance benefits is REVERSED AND REMANDED. The clerk of court is further directed to enter judgment for Claimant Gloria Abrahamson and close this case.

Entered this 15th day of March, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge